IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-336-KS

| | | |
|---|---|---|
| ROBIN BRASWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Robin Braswell ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and disability insurance benefits ("DIB"), disabled widow's benefits ("DWB"), and supplemental security income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties. For the reasons set forth below, the court denies Plaintiff's Motion for Judgment on the Pleadings [DE #21], grants Defendant's Motion for Judgment on the Pleadings [DE #23], and affirms the Commissioner's decision.

## STATEMENT OF THE CASE

Plaintiff applied for DIB, DWB, and SSI in the November 2016, with an alleged onset date of March 19, 2016.[1] (R. 22, 314–24.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 22, 87–89, 127–29, 227–28.) A hearing was held on July 16, 2018, before Administrative Law Judge ("ALJ") Gary Brockington, who issued an unfavorable ruling on September 25, 2018. (R. 22–86.) On June 15, 2019, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On August 7, 2019, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. §§ 405 and 1383(c)(3).

## DISCUSSION

I.   **Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere

---

[1] It is unclear from the record the precise application dates for each benefit. The ALJ reported application dates of November 14, 2016, for DIB and SSI, and of November 21, 2016, for DWB. (R. 22.) The application notices indicate dates of November 22, 2016, for DIB, and of November 30, 2016, for DWB and SSI. (R. 314–24.)

scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.  Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65

3

F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

## III.  ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2021, and the non-disability requirements for DWB. (R. 25.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since March 19, 2016, the alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff had the following severe impairments: "osteoarthritis of the bilateral hips, degenerative disc disease of the lumbar spine, hernia, tributary retinal vein occlusion and macular edema of the left eye, cataracts, hypertension, diabetes mellitus, diabetic neuropathy, retinopathy, obesity, dissociative disorder, and depressive disorder." (*Id.*) The ALJ found Plaintiff's "hyperlipidemia, anemia, acute

4

bronchitis, lipoma, diverticulosis, and hepatic steatosis" not to be severe impairments. (R. 25–26.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 13.) The ALJ expressly considered listings 1.02, 1.04, 2.02, 2.03, 2.04, 11.14, 12.03, 12.04, and 12.08. (R. 26–28.) The ALJ also stated he considered Plaintiff's hypertension in accordance with paragraph 4.00H1 of the listings; diabetes in accordance with paragraph 9.00 of the listings and SSR 14–2p; and obesity in accordance with paragraphs 1.00Q, 3.00O, and 4.00I1 of the listings and SSR 02–1p. (R. 26.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform medium work, as defined in 20 CFR 404.1567(c) and 416.967(c) and SSR 83-10, with the following limitations: frequently push/pull and operate foot and hand controls with the lower and upper extremities; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, frequently stoop, kneel and crouch; occasionally crawl; frequently reach overhead with the right upper extremity; frequently handle objects and finger bilaterally; no exposure to unprotected heights; and occasional exposure to hazardous machinery or hazardous moving mechanical parts. [Plaintiff] is limited to occupations requiring only frequent near acuity, far acuity, depth perception, accommodation, and field of vision. [Plaintiff]'s work is limited to simple, routine and repetitive tasks but not at a production rate pace; simple work-related decisions; occasional interaction with the public; and frequent interaction with co-workers and supervisors. [Plaintiff] would be off task no more than 10% of the time in an eight-hour workday, in addition to normal breaks (with normal breaks defined as a 15-minute morning and afternoon break and a 30-minute lunch break).

(R. 28.) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 30.) At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. 37.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, namely: store laborer, laundry worker, and salvage laborer. (R. 38–39.) The ALJ concluded that Plaintiff has not been disabled under the Act since March 19, 2016, Plaintiff's alleged onset date. (R. 39.)

## IV.    Plaintiff's Argument

Plaintiff contends the Commissioner erred by failing to evaluate "the treating opinion evidence from Plaintiff's treating psychiatrist consistent with Agency policy and Fourth Circuit precedent." (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #22] at 7.) More specifically, Plaintiff argues that the ALJ erred by not assigning greater weight to the opinions provided by a mental health therapist, Ms. Vernetta Smith, Licensed Professional Counselor Associate, and by failing to provide good reasons for discounting the weight assigned to Ms. Smith's opinions about Plaintiff's functional abilities. (*Id.* at 8–14.) The Commissioner argues that substantial evidence supports the ALJ's decision and that the ALJ properly analyzed Ms. Smith's opinions. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #24] at 6–16.) For the reasons discussed below, the undersigned agrees with the Commissioner.

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *3 (July 2, 1996).[2] As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R. §§ 404.1527(b)–(c), 416.927(b)–(c); SSR 96–8p, 1996 WL 374184, at *7.[3] Medical opinions are statements from physicians or other "acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). "Acceptable medical source" is defined by regulation and includes only licensed physicians, licensed or certified psychologists for purposes of establishing intellectual disability and intellectual functioning levels, licensed optometrists for purposes of establishing visual disorders, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a) (effective until Mar. 27, 2017).

---

[2] This agency ruling was rescinded March 27, 2017, for claims filed on or after that date. 82 Fed. Reg. 15,263 (Mar. 27, 2017).

[3] All references to 20 C.F.R. §§ 404.1527 & 416.927 are to the regulation in effect at the time Plaintiff filed her claim, which preceded the effective date of updated regulations on March 27, 2017. *See Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017).

Controlling weight will be given to "a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Craig,* 76 F.3d at 590. A treating source is a "physician, psychologist, or other acceptable medical source who provides . . . or has provided [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902 (effective until Mar. 27, 2017); *see also* SSR 06–03p, 2006 WL 2329939 (Aug. 9, 2006).[4]

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given the opinion by applying the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist in the field in which the opinion is rendered; and (6) any other relevant factors brought to the ALJ's attention. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). "The ALJ is not required to discuss all of these factors." *Ware v. Astrue,* No. 5:11-CV-446-D, 2012 WL 6645000,

---

[4] SSR 06–03p was rescinded when the changes to the related regulations became effective on March 27, 2017. *See* 82 Fed. Reg. 15,263 (Mar. 27, 2017).

at *2 (E.D.N.C. Dec. 20, 2012) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), and *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008)). "However, the ALJ must give 'good reasons' for the weight assigned to a treating source's opinion." *Ware*, 2012 WL 6645000, at *2 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

Ms. Vernetta Smith is a licensed therapist who began treating Plaintiff at the Family First Support Center in 2017 and provided two written opinions about Plaintiff's functional limitations. (*See* R. 576, 579, 582, 584 (March through July 2017 treatment notes), 570–74 (May 11, 2017, opinion), 639–43 (July 3, 2018, opinion).) Based on the treatment notes, it appears Ms. Smith saw Plaintiff on March 6, 2017 (R. 584), March 20, 2017 (R. 582), May 4, 2017 (R. 579), and July 26, 2017 (R. 576). Ms. Smith's written opinions express more severe functional limitations than those found by the ALJ in the RFC. (*Compare* R. 570–74, 639–43, *with* R. 28.) For example, in her written statement from May 11, 2017, Ms. Smith opined Plaintiff (i) was markedly limited in her ability to understand, remember, or apply information; to maintain concentration, persistence, or pace; to adapt or manage herself; to understand and carry out short and simple instructions; to understand uninvolved written or oral instructions; (ii) could sustain attention for only fifteen minutes; and (iii) could not maintain regular work attendance, would be absent more than four days per month, and would be off task at least 15% of the time at work. (R. 570–74.) Most of the functional limitations Ms. Smith expressed in May 2017 remained the

same in her July 2018 opinion statement, although some aspects of her opinion noted less severe restrictions (moderate limitation regarding ability to understand, remember, or apply information; moderate limitation regarding ability to adapt or manager herself; sustain attention for only thirty minutes). (R. 639–43.)

Plaintiff argues the ALJ erred by failing "to give any obvious consideration" to (1) the fact that Ms. Smith is Plaintiff's treating mental health professional, (2) Ms. Smith's specialist status as licensed professional counselor associate, and (3) the fact that Ms. Smith examined Plaintiff on multiple occasions. (*Id.* at 10–11 (citing 20 C.F.R. § 404.1527(c)(1), (2), & (5)).)

The ALJ gave several reasons for assigning "limited weight" to Ms. Smith's opinions. First, the ALJ noted that Ms. Smith was not an acceptable medical source. (R. 36.) Second, the ALJ noted that Ms. Smith had only seen Plaintiff three times before issuing her May 2017 opinion statement. (*Id.*) Third, the ALJ explained that objective findings noted in Ms. Smith's treatment notes, which included difficulty with focus, minimal eye contact, and appearing depressed, were inconsistent with the "extreme level of limitation" expressed in her written opinions. (*Id.*) Fourth, the ALJ explained that Ms. Smith's opinion that Plaintiff could not maintain attention and concentration for fifteen minutes, required enhanced supervision, and could not maintain socially appropriate behavior was inconsistent with the Plaintiff's testimony that she works part-time three hours each day caring for a client and completed an Associate's Degree during the alleged period of disability. (*Id.*)

These are good reasons for assigning less weight to Ms. Smith's written opinions. *See Ware*, 2012 WL 6645000, at *2. The ALJ's rationale is clearly explained and sufficient to enable judicial review. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017); *Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016) (per curiam) (unpublished) (noting the reasons provided by an ALJ for the weight assigned to a treating source's opinion must be specific enough "to enable reviewing bodies to identify clearly the reasons for the ALJ's decision"); 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) ("The adjudicator should explain the weight given to opinions from [medical sources who are not acceptable medical sources] or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

Plaintiff's arguments are not persuasive for several reasons. First, there is no dispute that Ms. Smith is not an acceptable medical source for purposes of applying 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). (*See* Pl.'s Mem. Supp. Mot. J. Pldgs. at 11 (conceding that Ms. Smith is not an acceptable medical source under the regulations).) Second, the ALJ is not required to "give obvious consideration" to each factor listed in 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See Ware*, 2012 WL 6645000, at *2. Third, the ALJ's opinion makes clear that he considered Ms. Smith's treating relationship with Plaintiff (*see* R. 32 (noting Plaintiff was "treated" by Ms. Smith on multiple occasions), her professional qualifications (*id.* (noting Ms. Smith's licensure)), and the fact that Ms. Smith examined Plaintiff (*id.* (summarizing clinical

observations from Ms. Smith's treatment notes)). The ALJ was not required to say that his reasons for discounting the weight assigned to Ms. Smith's opinions outweighed the reasons for assigning it greater weight; that is obvious from the opinion and rationale provided by the ALJ. *See Bryant v. Colvin*, No. 5:11-CV-648-D, 2013 WL 3455736, at *5 (E.D.N.C. July 9, 2013) (quoting *Spurlock v. Astrue*, No. 3:12-CV-20162, 2013 WL 841474, at *20 (S.D.W. Va. Jan. 28, 2013), for the proposition that an error regarding weight assigned to a medical opinion is harmless "so long as the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated"). Fourth, the ALJ correctly noted the number of times Ms. Smith saw Plaintiff and the record corroborates the summarized treatment notes from these visits. (*See* R. 32, 36, 576, 579, 582, 584.) Frequency of treatment and consistency with other evidence are factors identified in 20 C.F.R. §§ 404.1527(c), 416.927(c). It was the ALJ's duty to weigh this evidence, and his determination that the frequency of Plaintiff's treatment with Ms. Smith and lack of consistency with other evidence were reasons to discount the weight assigned to Ms. Smith's opinions is supported by substantial evidence. *See Craig*, 76 F.3d at 589. This court cannot "reweigh this evidence." *Sharp*, 660 F. App'x at 258 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012), and *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)); *see also Craig*, 76 F.3d at 589.

In sum, the ALJ provided good reasons for discounting the opinions of Ms. Smith, and those reasons are supported by the record. The ALJ applied the correct legal standards, and substantial evidence supports his factual findings.

Lastly, Plaintiff embeds an argument that the ALJ breached his duty to investigate and develop the arguments both for and against an award of benefits. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 14.) Plaintiff argues the ALJ could and should have (i) contacted Ms. Smith for clarification, (ii) arranged a consultative examination, (iii) scheduled a medical expert review, (iv) asked the state agency to review the file, or (v) asked Plaintiff more questions at the hearing. (*Id.*) In not taking any of these options, Plaintiff contends, the ALJ improperly "*set his opinion against that of . . . the only medical source of record who actually examined and evaluated her*" and "reject[ed] the <u>only</u> treating physician's opinions regarding Plaintiff's limitations." (*Id.*)

The court rejects this argument for several reasons. First, as noted above, Ms. Smith is not a physician. Second, there is no requirement that an ALJ base his RFC finding on a medical opinion. *See King v. Colvin*, No. 5:14-CV-401-RJ, 2015 WL 5655807, at *6 (E.D.N.C. 2015) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). It is permissible for an ALJ to assess an RFC that conflicts with a medical opinion so long as the ALJ explains why he has rejected the medical opinion. *See Ware*, 2012 WL 6645000, at *2. Third, the argument advanced by Plaintiff in favor of granting benefits is obvious—adopt the functional limitations stated in Ms. Smith's opinions—and was, as explained above, considered and evaluated by the ALJ. The ALJ did not set his own lay opinion against that of Ms. Smith; he evaluated Ms. Smith's opinions in light of the entire record and explained his reasons for assigning these opinions limited weight. That this evaluation did not result in the adoption of the RFC

13

limitations Plaintiff believes are supported by the record is not alone a reason to remand. *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) (holding that the ALJ's decision must be sustained even if the reviewing court disagrees so long as it is supported by substantial evidence and that "the duty to resolve conflicts in the evidence rests with the ALJ"). Fourth, an attorney represented Plaintiff before the ALJ; this attorney asked several questions regarding Plaintiff's symptoms and expressly declined to ask more. (R. 71–77.) Lastly, Plaintiff does not argue that "the medical record is incomplete and that, therefore, she was prejudiced because the ALJ did not seek out additional evidence . . . regarding function capacity." *Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *10 (E.D.N.C. Mar. 23, 2011) (citing *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980)), *mem. & recommendation adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #21] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE #23] is GRANTED, and the Commissioner's decision is AFFIRMED.

This 24th day of August 2020.

_Kimberly A. Swank_
_____
KIMBERLY A. SWANK
United States Magistrate Judge